UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., as Broadcast Licensee of the November 23, 2013, Ruiz/Hamer Broadcast,<br><br>    Plaintiff,<br><br>v.<br><br>MELISSA ESTRELLA, a/k/a MELISSA BARNETT, a/k/a MELISSA WHITE, Individually, and d/b/a ESTRELLA'S SPORTS BAR,<br><br>    Defendant. | Cause No.: 2:14-CV-171 |

## OPINION AND ORDER

This matter is before the court on the request for damages, costs, and fees filed by Plaintiff J & J Sports Productions, Inc. (docket entry 35). The Defendant did not file a response to J & J's request and the time period for doing so has expired. For the reasons discussed below, the court GRANTS the Plaintiff's request for damages and awards a total judgment in favor of the Plaintiff, J & J Sports Productions, Inc., against the Defendant, Melissa Estrella, a/k/a Melissa Barnett, a/k/a Melissa White, Individually, and d/b/a Estrella's Sports Bar, in the amount of $15,779.40. This judgment consists of statutory damages in the amount of $2,200.00; enhanced damages in the amount of $6,600.00; and attorneys' fees and costs in the amount of $6,979.40.

### DISCUSSION

Melissa Estrella, d/b/a Estrella's Sports Bar, located in Hammond, Indiana, pirated a satellite signal on November 23, 2013, so the establishment could show a broadcast of a

professional boxing match to its patrons (who were charged a $5.00 "cover" fee to enter the bar on the evening of the fight). J & J Sports, which owned the broadcast rights to the fight, was none too pleased when it discovered the piracy, and brought this lawsuit to recover damages for Estrella's violations of 47 U.S.C. §§ 553 and 605 of the Federal Communications Act, commonly referred to as the "piracy statutes." On October 23, 2015, this court granted J & J's motion for summary judgment. *See* Opinion and Order (DE 33). The court determined that summary judgment in favor of J & J was appropriate based on the undisputed evidence presented and the Defendant's failure to respond to J & J's requests for admissions (the latter being deemed admitted due to the failure to answer). *Id.*, generally. Having concluded that the Plaintiff was entitled to judgment and damages, the court directed J & J to file a brief, within 45 days of the date of that order, detailing and supporting its request for damages, costs, and fees. J & J has done so and, as the court stated at the outset, Estrella has failed to contest or otherwise respond to Plaintiff's request, so the only issue left to resolve is the amount of damages to be awarded to J & J.[1]

J & J states in its brief that it is requesting "statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) for the unauthorized exhibition" of the fight and "enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for the willful acts committed by Defendant." Plaintiff's Memorandum in Support of Damages, Costs, and Fees (DE 35), pp. 1-2. J & J also seeks to recover its attorneys' fees from Estrella and filed an attorney fee affidavit in support of that request, which itemizes the fees requested. Aff. of Julie Cohen Lonstein (DE 35-2).

---

[1] As the court noted in its October 23, 2015, Order and Opinion, the Defendant also failed to respond to J & J's motion for summary judgment–either due to a lack of interest in defending this suit or, more likely, a lack of funds to do so.

As J & J correctly points out, there are different ways to calculate damages in cases like this, different types of damages available, and at the end of the day the court is left with wide discretion to determine a fair amount to award based on the facts and circumstances of each case. *Id.*, pp. 3-15.

To begin, J & J states that it "elects to recover statutory damages under 47 U.S.C. § 605." *Id.*, p. 3. "Under § 605(e)(3)(C)(I), a claimant may elect actual damages or statutory damages. Statutory damages for each violation of § 605 range from $1,000 to $10,000, as the court considers just." *Id.*, p. 4 (citing *J & J Sports Productions, Inc. v. Turrubiartes*, 2013 WL 3878740 (S.D.Ind. July 26, 2013)). J & J also seeks additional damages known as "enhanced damages," which are punitive in nature. J & J states that "under section 605, enhanced damages are available where the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." *Id.* (citing 47 U.S.C. § 605(e)(3)(C)(ii)). As to enhanced damages, "the court may in its discretion increase the award of damages by an amount of not more than $100,000 for each violation." *Id*. (citing *Turrubiartes*, 2013 WL 3878740 at * 2). Finally, J & J moves for an award of attorney fees and costs it incurred in litigating this action, in the amount of $6,979.40, pursuant to § 605(e)(3)(B)(iii). *Id.*, p. 17.

One of our sister courts recently discussed the damages provisions of § 605, explaining as follows:

> A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(I). Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000, in the discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II). Plaintiff also seeks enhanced damages for a willful violation. Section 605 permits enhanced damages of up to $100,000, in the

3

discretion of the court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. See, e.g., *Kingvision* [*Pay-Per-View, Ltd. v. Scott E's Pub., Inc.*],146 F.Supp.2d [955,] 959–61 [E.D.Wisc. 2001]. . . .

. . . There are various ways in which courts have gone about calculating statutory and enhanced damages for violations of § 605:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show. *See, e.g.*, [*Time Warner Cable of N.Y. City v.*] *Googies Luncheonette, Inc.*, 77 F.Supp.2d [485,] 489 [(S.D.N.Y. 1999)] (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F.Supp. 107, 111 (E.D.N.Y. 1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F.Supp.2d at 489–90 (listing cases); [*Time Warner Cable of N.Y. City v.*] *Taco Rapido Rest.*, 988 F.Supp. [107,] 111 [(E.D.N.Y. 1997)] (same). A multiplier has been used in cases of willful violations. *See, e.g.*, *Googies Luncheonette, Inc.*, 77 F.Supp.2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, . . . 1991 WL 58350, *2 (E.D.N.Y. 1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Kingvision*, 146 F.Supp.2d at 960. The court in *Kingvision* calculated the statutory damages based upon the rate the plaintiff charged its customers for the right to exhibit the program, which in turn was based upon the maximum fire code occupancy of the building in which the exhibition was to take place.

Here, Plaintiff has provided its rate card indicating what it would charge to permit the defendants to show its fight program based on the maximum capacity of the facility where the event is broadcast.

*J & J Sports Productions, Inc. v. Sangria's Mexican Grill 2 LLC*, 2015 WL 5824900 at * 3 (E.D.Wis. Oct. 6, 2015). In *Sangria's*, the court awarded J & J statutory damages in the amount of $2,200.00, the amount Sangria's would have paid J & J to acquire the rights to show J & J's broadcast had the bar purchased those rights legitimately. *Id*.

4

**I. Statutory Damages.**

J & J seeks damages for a single violation of the piracy statutes, i.e., Estrella's interception of J & J's broadcast on November 23, 2013. Again, J & J acknowledges that "[i]n determining the amount of statutory damages that can be imposed within the range of $1,000.00 to $10,000.00, § 605 leaves the decision within the sound discretion of the Court." Plaintiff's Memorandum, p. 4 (citing *Turrubiartes*, 2013 WL 3878740 at * 2). That's all well and good, but as J & J also notes, "[t]he U.S. district courts have not adopted one bright line rule in determining the amount of damages to award within the range provided by 47 U.S.C. § 605." *Id*., p. 5. To aid the court, J & J cites dozens of cases wherein courts across the country have calculated damage awards in piracy cases such as this. *Id*., pp. 4-9. Some courts calculate damages by "appl[ying] a formula where the court will multiply the defendant establishment's maximum occupancy by a set sum[,]" while others use "a flat sum for each violation." *Id*., p. 5 (citations omitted). Other courts have imposed larger statutory damage awards, recognizing that "[t]he deterrence of future violations is one of the key objectives of . . . § 605." *Id*., p. 7 (citing *Prostar v. Massachi*, 239 F.3d 669 (5th Cir. 2001)). Some courts base damage awards on the amount the offending establishment *would* have paid had it acquired the broadcast legitimately (i.e., by contracting with the owner of the broadcast rights in the first place, as in the *Sangria's* case). In the present case, J & J explains that "[h]ad Defendant legally contracted with the Plaintiff to purchase the November 23, 2013[,] fight for commercial exhibition, Defendant would have had to pay a minimum of $2,200.00." *Id*., p. 9. However, J & J is not keen on the idea of the court using this formula, since, according to J & J, it does not take into account the willful nature of Estrella's conduct. J & J maintains that "[i]f the Defendant were to pay the correct amount now, it would

5

not make Plaintiff whole nor would it deter this behavior in the future." *Id*. Because Estrella's willfully pirated the broadcast, advertised the fight to attract patrons, and imposed a "cover" charge on patrons on the night of the fight, J & J argues that "an award of $10,000.00 is justified in the present matter." *Id*. "It is clear that [Estrella's] violation was not inadvertent and occurred for the purpose of commercial advantage, and Plaintiff should recover damages in an amount which will send the message that satellite piracy will not be tolerated." *Id*., p. 10. J & J's arguments are well taken, but the court believes an award of $10,000 in statutory damages in this case is too high. J & J states that it would have charged Estrella's $2,200 for the privilege of showing the broadcast. J & J Sports Rate Card (DE 31-3), p. 4. The affidavit of J & J's investigator, who was present in Estrella's on the night the fight was broadcast, stated that the establishment showed the fight in question on two television sets, that the estimated maximum occupancy of the bar was 50 (although he does not state how many people were in the bar that night), and that he was charged a $5.00 "cover" charge. Aff. of Patrick Bosco (DE 31-4). While the record is silent as to the number of patrons present in Estrella's on the night of the fight, one thing is obvious–the bar did not exactly reap a windfall by showing the broadcast. The facts in this case are very similar to those in *J & J Sports v. Sangria's*, wherein the court awarded statutory damages in the amount of the original contract price. The court concludes that the same result is fair here and awards J & J statutory damages in the amount of $2,200.00.

**II. Enhanced Damages.**

As to the issue of enhanced damages, the district court in *J & J Sports v. Sangria's* explained as follows:

> As I have already concluded that Defendant Sangria's violation was willful within

the meaning of the statute, I now turn to the question of what amount of enhanced damages is appropriate. The only guidance the statute itself gives courts in assessing damages for willful violations is that they not exceed $100,000 for violations of § 605 and $50,000 for violations of § 553. 47 U.S.C. § 553(c)(3)(B); 47 U.S.C. § 605(e)(3)(C)(i)(II). In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. *Joe Hand Prods. v. Kaczmar*, . . . 2008 WL 4776365, at *2 (N.D.Ill. Oct. 29, 2008) (citations omitted). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense) ." *Id.*[2]

*Id.*, 2015 WL 5824900 at * 3. Judge Griesbach concluded that while Sangria's was a small establishment (with an occupancy of 40) and likely "did not receive substantial financial gains as a result of [the] piracy[,]" it was still important to impose enhanced damages to "deter future violations." *Id*. To that end, Judge Griesbach awarded enhanced damages of $6,600, three times the amount of statutory damages he imposed. Once again, the court concludes that the circumstances in the present case are very similar to those in *Sangria's* and that the same award is warranted. The court awards J & J enhanced damages in the amount of $6,600.00.

**III. Attorneys' Fees and Costs.**

J & J is asking for an award of $6,979.40 for attorneys' fees and costs incurred in pursuing this lawsuit. "Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found,

---

[2] The court is tasked with imposing enhanced damages in an amount that will deter the defendant, as well as others so inclined, from pirating broadcast signals in the future, while not assessing an amount so large that it imperils a defendant's ability to remain in business. As a practical matter, this is sometimes nearly impossible to do, given that small establishments such as Estrella's could be crippled by the imposition of even a minimum award of statutory damages, enhanced damages, and attorneys' fees. But this is the state of the law and since Estrella's intentionally stole J & J's broadcast signal for financial gain, the Defendant must face the consequences of those actions.

attorneys' fees and costs are mandatory." *J & J Sports v. Sangria's*, 2015 WL 5824900 at *3. In support of this request, J & J's chief counsel in this case submitted her affidavit detailing the fees and costs incurred in the course of this litigation. Affidavit of Julie Cohen Lonstein (DE 35-2). Included in this amount is $6,224.40 in attorneys' fees,[3] the court filing fee of $400.00, and service of process fees of $355.00. The court has reviewed the affidavit and finds J & J's request for fees and costs to be reasonable under the circumstances of this case, both in terms of the hourly rates charged by Plaintiff's counsel and the number of hours expended on this litigation. Accordingly, the court awards the sum of $6,979.40 in attorneys' fees and costs.

## CONCLUSION

For the reasons set forth above, the court GRANTS the Plaintiff's request for damages and awards a total judgment in favor of the Plaintiff, J & J Sports Productions, Inc., and against the Defendant, Melissa Estrella, a/k/a Melissa Barnett, a/k/a Melissa White, Individually, and d/b/a Estrella's Sports Bar, in the amount of $15,779.40. This judgment consists of statutory damages in the amount of $2,200.00; enhanced damages in the amount of $6,600.00; and attorneys' fees and costs in the amount of $6,979.40.

---

[3] This amount for attorneys' fees is higher than the amount awarded to J & J in other similar cases. *See, e.g.*, *Sangria's*, 2015 WL 5824900 (No. 1:15-CV-656, DE 17–awarding attorneys' fees and costs of $ 1,712.00); *J & J Sports Productions, Inc. v. Broadway Baby of Wisc., Inc.*, 2013 WL 238850 (E.D.Wis. Jan. 22, 2013) (No. 2:12-CV-405, DE 14– fees and costs of $2,094.00); *J & J Sports Productions, Inc. v. GMR Entertainment LLC*, 2012 WL 6675432 (E.D.Wisc. Dec. 20, 2012) (No. 2:11-CV-500, DE 41–fees and costs of $3,203.50). The court notes, however, that in each of the cases listed, J & J obtained a default judgment and then moved for damages. In this case, J & J had to do more by litigating this matter through the summary judgment stage. So while the fees imposed in this case are higher than the amount imposed in other cases, they are reasonable given the amount of time J & J's counsel spent pursuing this matter.

Date: March 28 , 2016.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana